UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARTIN ACQUISITION, LLC  CIVIL ACTION NO. 18-cv-0754

VERSUS  MAGISTRATE JUDGE HORNSBY

CHEETAH GAS CO. LTD, ET AL

**MEMORANDUM RULING**

**Introduction**

Apache Corporation assigned various mineral interests to Cheetah Gas Co., Ltd. in an assignment recorded in 1996. Exhibit A to the Apache-Cheetah Assignment listed several leases, including four at issue here. Those four leases covered land in both Section 26 and Section 27. Apache later made an assignment to Martin Acquisition, LLC of interests in the subject leases to the extent the leases cover Section 26 (excluding one formation). Martin then assigned interests to others, but Martin reserved or repurchased certain rights; it currently claims ownership of an overriding royalty interest in Section 26 that traces its title back to the Apache-Martin Assignment.

Cheetah contends that the Apache-Cheetah Assignment gave Cheetah all of the relevant interests in the leases with respect to Section 26. Cheetah assigned those interests to USG Properties Haynesville, LLC, reserving to Cheetah and PetroTiger IV, Ltd. an overriding royalty.

Martin filed this civil action against Cheetah, USG, and PetroTiger. It alleges that the Apache-Cheetah Assignment gave Cheetah an interest in the leases only to the extent

they affect Section 27, with Cheetah not acquiring any rights in the leases to the extent they cover Section 26. Martin asks for a declaratory judgment that the USG assignment is invalid and that Martin has the sole interest in the leases assigned by Apache to the extent they cover lands in Section 26. Cheetah, PetroTiger, and USG filed answers as well as counterclaims that asserted their interests in the properties.

Before the court are two motions for summary judgment, one filed by Cheetah and PetroTiger (Doc. 27) and the other filed by USG (Doc. 31). They argue that the Apache-Cheetah Assignment unambiguously assigned to Cheetah the interests in Section 26 and entitles them to judgment dismissing Martin's complaint and declaring that they own the relevant Section 26 interests. Martin responds that the Apache-Cheetah Assignment is ambiguous with respect to the interests assigned so that summary judgment should be denied and Martin should be allowed to present parol evidence to support its interpretation of the assignment. For the reasons that follow, the motions for summary judgment will be granted.

**Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013).

The movants submit written instruments found in the title records related to the interests at issue. The authenticity of the documents is not disputed. Martin submits some

additional documents that are not recorded in the conveyance records. The movants do not contest the authenticity of those documents, but the parties disagree over their relevance under the rules governing the consideration of parol evidence.

**Relevant Facts**

Four mineral leases were executed in 1953. The Lillie Flournoy-Johnson lease described land in Caddo Parish, treated as comprising 120 acres, that was all lying in Sections 26 and 27 of Township 17N, Range 16W. The Lillie Flournoy-Schaff lease described lands comprising 99 acres that were also said to be located in Sections 26 and 27. The Lucien Flournoy-Johnson lease described lands, treated as comprising 120 acres, lying in Sections 26 and 27. The Moncrief-Johnson lease described land, treated as comprising 171.56 acres, located in Sections 26 and 27, as well as in Sections 24 and 35. An act of correction was recorded with respect to the Moncrief-Johnson lease to correct the property description, but the affected sections remained the same.

The instrument at the heart of this lawsuit is an Assignment, Bill of Sale and Conveyance from Apache to Cheetah (the "Apache-Cheetah Assignment" or "Assignment") that the parties signed in late 1995 and recorded in January 1996. Apache and two other companies appeared as assignors, with Cheetah as the assignee. The Assignment stated that, in exchange for valuable consideration, "Assignors hereby Sell, Transfer, Convey and Assign to Assignee, all of Assignors' right, title and interest in and to the Properties, to have and to hold unto Assignee, its successors and assigns, forever subject to the terms and conditions set forth herein." The Assignment defined "Properties"

as the Well, Leases, Lands, Equipment, Facilities, Contracts, Production and Data as defined in the Assignment.

Wells and Leases, perhaps most important here, were defined in recitals that stated:

Assignors are the owners of certain interests in the following:

1. Those certain oil and/or gas wells ("Wells") and those certain oil and gas leases described ("Leases") on **Exhibit "A"**, only insofar as they cover the lands described on **Exhibit "A"** (the "Lands");

The Assignment went on to define the Equipment located on or about the Lands and used in connection with the operation of the Wells and Leases, as well as Facilities, Contracts, Production, and Data associated with the same. All of those rights were assigned to Cheetah.

The Assignment is a mere three pages of text, followed by signature pages, and then Exhibit A. The exhibit is 61 pages long and sets forth information about scores of leases, including the four at issue.

Exhibit A describes the Lillie Flournoy-Johnson Lease as follows:

| LEASE # | TRACT # | LESSOR | LESEE | DATE | RECORDING BOOK/ PAGE |
|---|---|---|---|---|---|
| 3136975B | | LILLIE M. FLOURNOY ET AL | GILBERT S. JOHNSON, JR. | 3/27/53 | FILE 47674 |
| | 01 | **Twp/ Ar/ Ral:** 0000 | **Rng/ Blk:** 0000 | **Sec/ Abs/ Sec:** 0000 | |
| | | BRF 120 ACS IN SECS 26 & 27, T17N, R16W. LESS HARKRIDER SAND IN NW & SE NW SEC 26 & SE NE SEC 27 RELEASED IN 2-64 LESS OIL RTS IN RODESSA-HILL ZONE, ASSIGNED UNDER ACS IN E2 NW4 & W2 NW4 SEC 26 & 10 ACS IN SEC 27 LESS OIL RTS IN HARKRIDER ZONE IN NE NW & SW4 NW4 SEC 26 AND SE/C NE NE SEC 27 ASSIGNED | | | |
| | | **Twp/ Ar/ Ral:** 017N | **Rng/ Blk:** 016W | **Sec/ Abs/ Sec:** 0026 | |
| | | FLOURNOY "A" #1; CV D SUGG | 120.00 AC OUY OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO HARKRIDER SAND ONLY) DEPTH A-ALL DEPTHS L/E RODESSA HILL ZONE DEPTH B- RODESSA HILL ZONE ONLY | | | |
| | | **Twp/ Ar/ Ral:** 017N | **Rng/ Blk:** 016W | **Sec/ Abs/ Sec:** 0027 | |
| | | FLOURNOY "A" #1; CV D SUGG | 120.00 AC OUT OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO HARKRIDER SAND ONLY) DEPTH A-ALL DEPTHS L/E RODESSA HILL ZONE DEPTH B- RODESSA HILL ZONE ONLY | | | |
| | | | | | FILE 47674 |
| | 02 | **Twp/ Ar/ Ral:** 017N | **Rng/ Blk:** 016W | **Sec/ Abs/ Sec:** 0026 | |
| | | FLOURNOY "A" #1; CV D SUGG | 120.00 AC OUT OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO HARKRIDER SAND ONLY) | | | |
| | | **Twp/ Ar/ Ral:** 017N | **Rng/ Blk:** 016W | **Sec/ Abs/ Sec:** 0027 | |
| | | FLOURNOY "A" #1; CV D SUGG | 120.00 AC OUT OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO HARKRIDER SAND ONLY) | | | |

Exhibit A describes the Lucien Flournoy-Johnson Lease as follows:

| LEASE # RECORDING TRACT # PAGE | LESSOR | LESSEE | DATE | BOOK/ |
|---|---|---|---|---|
| 3136975A | LUCIEN FLOURNOY | GILBERT S. JOHNSON, JR. | 3/27/53 | |
| | | | | FILE 47675 |
| 01 | Twp/ Ar/ Ral: 017N FLOURNOY "A" #1; CV D SUGG HARKRIDER SAND ONLY) DEPTH A-ALL DEPTHS L/E RODESSA HILL ZONE DEPTH B- RODESSA HILL ZONE ONLY | Rng/ Blk: 016W 120.00 AC OUT OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO | Sec/ Abs/ Sec: 0026 | |
| | | | | FILE 47675 |
| 02 | Twp/ Ar/ Ral: 017N FLOURNOY "A" #1; CV D SUGG HARKRIDER SAND ONLY) | Rng/ Blk: 016W 120.00 AC OUT OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO | Sec/ Abs/ Sec: 0026 | |
| | Twp/ Ar/ Ral: 017N FLOURNOY "A" #1; CV D SUGG HARKRIDER SAND ONLY) | Rng/ Blk: 016W 120.00 AC OUT OF SEC 26, 27 (L/E SEC 26: NW/NW SEC 27: SE/NE AS TO | Sec/ Abs/ Sec: 0027 | |

Exhibit A describes the Lillie Flournoy-Schaff Lease as follows:

| LEASE # TRACT # | LESSOR | LESSEE | DATE | RECORDING BOOK/ PAGE |
|---|---|---|---|---|
| 3115627 | LILLIE M FLOURNOY ET AL | BYRON H SCHAFF | 7/11/53 | |
| | | | | FILE #54440 |
| 01 | Twp/ Ar/ Ral: 017N FLOURNOY "A" #1; CV D SUGG NW/4 SEC 26 & E/2 SE/4 & A STRIP IN SE/4 NE/4 SEC 27 | Rng/ Blk: 016W BRF 99 ACS IN SECS 26 & 27 LESS HARKRIDER SAND IN SW/4 & A STRIP IN SE/4 | Sec/ Abs/ Sec: 0026 | |
| | Twp/ Ar/ Ral: 017N SEE DESC AND ACREAGE FOR SEC 26 | Rng/ Blk: 016W | Sec/ Abs/ Sec: 0027 | |

Exhibit A describes the Moncrief-Johnson Lease as follows:

| LEASE # TRACT # | LESSOR | LESSEE | DATE | RECORDING BOOK/ PAGE |
|---|---|---|---|---|
| 3543932 | E S MONCRIEF ET UX | G S JOHNSON JR | 3/23/53 | |
| | | | | BK 687 PG 417 |
| 01 | Twp/ Ar/ Ral: 017N FLOURNOY UNIT /A/ #1: CV D SUGG DATED 12-6-56 | Rng/ Blk: 016W 25.09 AC IN SEC27 MORE FULLY DESC IN CORRECTION OF LEASE | Sec/ Abs/ Sec: 0027 | |
| | | | | BK 687 PG 417 |
| 02 | Twp/ Ar/ Ral: 017N 73.64 AC IN SEC 24 MORE FULLY DESC IN CORRECTION OF LEASE DATED 12-6-56 | Rng/ Blk: 016W | Sec/ Abs/ Sec: 0024 | |
| | Twp/ Ar/ Ral: 017N 74.45 AC IN SEC 26 MORE FULLY DESC IN CORRECTION OF LEASE DATED 12-6-56 | Rng/ Blk: 016W | Sec/ Abs/ Sec: 0026 | |
| | Twp/ Ar/ Ral: 017N 12.61 AC IN SEC 35 MORE FULLY DESC IN CORRECTION OF LEASE DATED 12-6-56 | Rng/ Blk: 016W | Sec/ Abs/ Sec: 0035 | |

About five years after the Apache-Cheetah Assignment, in May 2001, Apache and Martin entered into a Partial Assignment of Oil, Gas and Mineral Leases. Apache assigned to Martin all of its interest in several leases, including the four at issue here, "LESS AND

EXCEPT the Rodessa Hill Formation." Exhibit A to the Partial Assignment listed several leases, including the four at issue, and stated that it is an exhibit attached to the Partial Assignment "covering lands in Section 26 . . . less and except the Rodessa Hill Formation, in Caddo Parish, Louisiana." The central issue in this lawsuit is whether the Apache-Cheetah Assignment had already assigned those Section 26 interests to Cheetah.

Soon afterward, in May 2001, Martin entered into an assignment with Mineral Ventures, Inc. and assigned 100% of Martin's interest in certain leases. Over the next decade, Mineral Ventures conveyed portions of its interest in the leases located in Section 26. The companies that obtained those interests are Sunland Production Co.; Pittman Land Management, LLC; Brown Falcon Properties, LLC; and PetroHawk Properties, LP (now BHP Billiton Petroleum). One result of those transactions is that Martin held an overriding royalty interest in the leases located in Section 26.

The final relevant transfer came in 2017. Cheetah and PetroTiger transferred their interests in various mineral leases to USG. An exhibit to the USG assignment listed the four subject leases and stated that the transfer was limited to lands in Section 26 and to depths below the top of the Cotton Valley Formation. Cheetah and PetroTiger reserved an overriding royalty interest that covered the depths transferred to USG. Martin contends that it has superior title to Cheetah and PetroTiger because the Apache-Cheetah Assignment did not convey to Cheetah any interests in the leases insofar as they covered Section 26.

**Legal Principles**

The parties agree that Louisiana law governs the interpretation of the Apache-Cheetah Assignment and whether it assigned to Cheetah interests in Section 26 or was limited to interests in Section 27. "In Louisiana, the Civil Code provides those rules." Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc., __ F.3d __, 2020 WL 773287, *7 (5th Cir. 2020).

"Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Art. 2046. "The words of a contract must be given their generally prevailing meaning." Art. 2047. And "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." Art. 2048. In other words, "a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." Chevron Oronite, quoting Prejean v. Guillory, 38 So. 3d 274, 279 (La. 2010).

"Whether contract language is ambiguous under Louisiana law is a question of law." Apache Deepwater, LLC v. W&T Offshore, Inc., 930 F.3d 647, 656 (5th Cir. 2019). A contract is ambiguous, as a matter of law, when its terms are susceptible to more than one interpretation, when there is uncertainty as to its provisions, or when the parties' intent cannot be ascertained from the language used. Greenwood, 950, LLC v. Chesapeake Louisiana, LP, 683 F.3d 666, 668 (5th Cir. 2012). The Fifth Circuit interprets Louisiana law to require that the multiple interpretations must each be "reasonable" to establish

Page **7** of **17**

ambiguity. Id. at n. 11. If a contract is ambiguous, extrinsic evidence is admissible to interpret the intent behind an ambiguous provision. Id. at 668-69.

"A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." Art. 2049. And each provision "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." Art. 2050. "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code Art. 2053.

**Analysis**

The Apache-Cheetah Assignment stated that it conveyed to Cheetah the wells and leases on Exhibit A only insofar as they cover the lands described on Exhibit A. The descriptions of the subject leases all contain references to tracts of land in both Section 26 and Section 27, with one lease also including references to tracts in Sections 24 and 35.

Each of the lease descriptions includes a reference to a particular well known as Flournoy "A" #1: CV D SUGG. Martin states that the Cotton Valley "D" sand units in that area are sectional units, meaning that each section is a separate unit. The CV D SUGG is located only in Section 27. The designation for the Section 26 unit is CV D SUF. The only well for the Section 26 unit was plugged in 1985 (long before the 1995 Apache-Cheetah Assignment).

Martin contends that the references in Exhibit A to the Flournoy "A" #1: CV D SUGG well, which is in a unit that affects only Section 27, means that the only lands

transferred in the Assignment were those included in the CV D SUGG, i.e., those in Section 27. At a minimum, Martin contends, the Assignment is ambiguous with respect to whether property in Section 26 was transferred, making summary judgment inappropriate and warranting the admission of parol evidence to determine the true intent of the parties on this issue.

Martin cites <u>Estess v. Placid Oil Company</u>, 2014 WL 1316023 (W.D. La. 2014), a case in which Judge Foote held that language in an assignment was ambiguous. The conveying language in the assignment was similar to that in this case, and the description of interests conveyed from certain sections began with references to specific wells, followed by a description of various leases and related agreements. One party argued that the unit/well designations that began the descriptions on Exhibit A limited the assignment of interests in the listed leases to the depths, formations, and well bores specified in those unit/well designations. The other side argued that the unit/well designations were merely headings or organizational tools intended to provide ease of reference for persons who view the assignment.

The parties later consented to have the undersigned magistrate judge decide the case, and they submitted it on motions for a resolution of the ambiguity (although without submitting any parol evidence). The undersigned began by agreeing with Judge Foote that the assignment at issue was ambiguous because it was susceptible of different meanings. The undersigned held that Exhibit A's references to specific wells associated with various leases did not limit what was being assigned to the interests in those wells and related formations. The more reasonable view was that the reference to the wells and formations

was more of an organizational device to assist persons who were reviewing title or otherwise attempting to assess ownership interests in the relevant areas. The court noted that broad assignments of interests in mineral leases are fairly common, assignments of particular well bores or the like are less common, and when parties wish to limit the interests assigned to a certain depth, well bore, or the like, they tend to use very specific language. There was no such specificity in Exhibit A, so a broader assignment was held to have occurred. Estess v. Placid Oil Co., 2016 WL 4031031 (W.D. La. 2016).

The principles of Estess v. Placid Oil are equally applicable in this case, but whether a particular assignment is ambiguous must stand on the particular language and structure of that assignment. The descriptions on Exhibit A in this case have similarity in that a particular well is referenced, but the structure of the property descriptions and the information they contain is different.

Cheetah's motion anticipates Martin's argument that the reference to the Flournoy "A" #1 well limited the interests assigned to those in Section 27. Cheetah notes that Apache's assignment to it also assigned whatever interests the assignor had in various wells mentioned on the exhibit, which would explain why Exhibit A would include a reference to the only well that then existed on either Section 26 or Section 27. Cheetah also points out that the Moncrief lease description included two tracts. The first was a number of acres in Section 27, and it included a reference to the Flournoy "A" #1 well. The description of tract 2 included acreage in Sections 24, 26, and 35, but it did not make any reference to the Flournoy "A" #1 or other well. Thus, it would be incredibly difficult to read the description of the Moncrief lease and determine that it did not convey an interest in Section 26.

The descriptions for the other three subject leases all include particular references to tracts within Section 26. The Flournoy-Schaff lease references a tract that includes acreage located in both Sections 26 and 27, less the Harkrider sand in certain portions of Section 26 and certain portions of Section 27. There would be no need to exclude a particular portion of the property in Section 26 if nothing in Section 26 was being assigned. There was also nothing in the description that stated that the lease was assigned only insofar as the Flournoy "A" #1 or related unit affected the leased property. If the parties had wanted to exclude land in Section 26, they could have easily done so by not including any reference to Section 26 or simply stating that the lease was assigned only insofar as it covered Section 27. Merely including a reference to a well that happens to affect only Section 27 would be, at best, a very poor way to imply that such an exclusion was intended.

The Lucien Flournoy-Johnson lease describes two tracts. The information provided about the first tract includes a reference to the Flournoy "A" #1 well and describes the property as 120 acres out of Section 26 and Section 27, less and except the Harkrider sand in a certain portion of Section 26 and a certain portion of Section 27. The description for tract 2 is similar, but it repeats the description for lands in Section 26 and for Section 27. If the reference to the Flournoy "A" #1 well were intended to limit the assignment to Section 27, it would have been meaningless to include the detailed information about what portions of Section 26 were excluded from the assignment.

The Lily Flournoy-Johnson lease description also includes two tracts. The descriptions include specific reference to the acreages being in Sections 26 and 27, less and except certain lands in both of those sections as to the Harkrider sand. There are 11

references to Section 26 in the description. There is no language that states that lands in Section 26 are excluded from the scope of the assignment.

USG's motion embraces Cheetah's position and argues that it is entitled to summary judgment declaring that it owns the four mineral leases in Section 26, subject to reserved interests in favor of Cheetah and PetroTiger. It invokes a Louisiana principle of contractual interpretation that grants such as the Assignment are liberally construed, while exceptions to grants (such as the asserted reservation by Apache of Section 26 interests) are strictly construed. "[I]n deeds, where language making an exception or reservation is doubtful, it must be construed most favorably to the grantee." Doyal v. Pickett, 628 So.2d 184, 187 (La. App. 2d Cir. 1993). And "[i]t is a principle of universal application that grants are liberally, exceptions strictly, construed." Rock Island, A.& L.R. Co. v. Guillory, 205 La. 141, 17 So.2d 13 (1943). Of similar nature is La. Civ. Code Art. 2474, which states: "The seller must clearly express the extent of his obligations arising from the contract, and any obscurity or ambiguity in that expression must be interpreted against the seller."

USG points out that the parties to the Apache-Cheetah Assignment knew how to except property from the scope of the assignment, and they did so in several places, such as the exclusions of the Harkrider sands. Some of the several other leases affected by the Assignment included exceptions of certain lands. But there is no language in the Assignment that states that Section 26 is excluded from what is assigned in connection with the four subject leases.

USG notes that the Apache-Cheetah Assignment uses the broad title "assignment" rather than "partial assignment." Martin responds to USG's argument about the title of the

instrument by pointing out that "[t]he label placed on the transaction is not determinative" in deciding the nature of the agreement. Bayou Fleet P'ship v. Phillip Family, LLC, 976 So. 2d 794, 796 (La. App. 5 Cir. 2008), citing Berthelot v. Le Inv., L.L.C., 866 So. 2d 877, 880 (La. App. 4 Cir. 2004). USG concedes that the title of an instrument may not be determinative, but it argues that it can be relevant.

The title of an instrument may be relevant in certain circumstances, but it carries no weight in the context of this case. It is not uncommon for a multi-lease conveyance to be broadly labeled "assignment" yet include several exceptions. And the Assignment at issue does include exceptions. The issue is whether Section 26 is among them, and the title of the document is of no significance in making that determination.

Martin argues that the description of what is conveyed in the Apache-Cheetah Assignment is ambiguous because the Assignment states that it is "expressly subject to the terms and conditions of that certain Purchase and Sale Agreement dated November 20, 1995 . . . ." The Assignment is recorded, but the purchase and sale agreement is not. Martin contends that this causes an ambiguity that requires the admission of parol evidence.

It is not unusual to see a recorded assignment refer to a lengthy and detailed purchase and sale agreement that often precedes such an assignment. The terms of that unrecorded purchase and sale agreement may govern certain rights and obligations between the contracting parties both before and after closing, but it is not effective as to third parties such as Martin or USG who acquire interests in the immovable property. And there is no suggestion that the property description in the recorded Assignment is in any way enlarged or restricted by the terms of purchase and sale agreement. There is no factual or legal basis

to determine that anything in the purchase and sale agreement creates an ambiguity in the Assignment.

Martin argues that the Moncrief lease is ambiguous because the description of tract 1 refers to 25.09 acres in Section 27 that is more fully described in a correction of lease dated 12/6/56. Martin argues that this reference to a description in an external document renders the Assignment ambiguous. Cheetah responds that the Moncrief correction is recorded in the conveyance records, and a copy of it is in this record at Doc. 27-6. That recorded instrument includes corrections to the description of a tract of land in Sections 26, 27, 34, and 35.

Martin argues that the conduct of itself and parties who have dealt with it support a finding of ambiguity. It offers evidence that the Assignment was preceded by a bid package, and it says that none of the properties identified on the property list included Section 26. The bid package reportedly also lacked reference to any of the four subject leases. Martin reads the bid package to indicate that Apache intended to sell its producing properties, and there were no producing wells in Section 26 at the time. Apache, consistent with Martin's interpretation, later sold (or resold, depending on one's view) its Section 26 leases to Martin in 2001, and other parties purchased interests in those properties through Martin.

There is nothing in the executed and recorded Assignment that states that it is limited to producing properties. The existence and interpretation of the bid package might be helpful to clarify an ambiguity in the Assignment if one were found, but if the language of the Assignment is unambiguous, then such parol evidence is not admissible. And parol

evidence cannot be used to create an ambiguity where there is not one. The bid package may be a part of the negotiations that led to the Assignment, but there are often all manner of proposals, counteroffers, correspondence, and conversations that precede the final executed assignment. What was or was not discussed during those negotiations cannot be used to set aside unambiguous language in that assignment.

Martin argues that Apache's later assignment to Martin in 2001 that included the leases to the extent they cover Section 26 indicates that Apache did not believe it had sold the Section 26 interests to Cheetah. USG and Cheetah respond that this could just mean that Apache or someone acting on its behalf made a mistake. This lawsuit was eventually filed to resolve the disputes that arose as a result of that apparent mistake that resulted in a double sale. Martin also points to what it perceives are ambiguities in other descriptions in Exhibit A, but those issues are not before the court in this lawsuit that is focused on the four subject leases and the Section 26 interests.

"Under Louisiana law, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." Franks Inv. Co. v. Union Pac. R. Co., 772 F.3d 1037, 1042 (5th Cir. 2014), quoting Lloyds of London v. Transcon. Gas Pipe Line Corp., 101 F.3d 425, 429 (5th Cir. 1996) (applying Louisiana law). Only when a contract is ambiguous is "extrinsic evidence . . . admissible to clarify the ambiguity or to show the parties' intent." Franks, citing McDuffie v. Riverwood Int'l Corp., 660 So.2d 158, 160 (La. App. 2d Cir. 1995).

After considering the record evidence, the arguments of the parties, and the applicable Civil Code articles, the undersigned finds that the Apache-Cheetah Assignment is not susceptible to more than one reasonable meaning regarding the assignment of the Section 26 interests at issue. The Assignment unambiguously conveyed interests in the four subject leases to the extent the leases covered Section 26, as well as the other section(s) mentioned in Exhibit A. The references in Exhibit A to a well that affected only Section 27 was not an exclusion of any other sections from the scope of the Assignment, and the mention of that well did not create an ambiguity in that regard. Section 26 was mentioned repeatedly in the descriptions of the assigned properties, with certain parts of Section 26 excluded, but there is no language in the exhibit that states that Section 26 is entirely outside the scope of the Assignment. The Assignment, in this regard, is not susceptible to more than one reasonable meaning under the circumstances.

**Conclusion**

Cheetah, PetroTiger, and USG are entitled to summary judgment dismissing Martin's complaint and declaring that, among the parties to this suit, they own the Section 26 interests at stake. Accordingly, the motions for summary judgment filed by Cheetah and PetroTiger (Doc. 27) and USG (Doc. 31) are granted. A status conference will be held in due course to discuss whether any further proceedings are necessary to resolve the counterclaims or any other outstanding matters. Considering the importance of the interests at stake and the need for precision in legal documents affecting those interests, the parties are directed to confer and submit a proposed order that reflects this ruling.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of March, 2020.

Mark L. Hornsby
U.S. Magistrate Judge